# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NEIL ACKERMAN, R26112,

    Petitioner,

v.

RANDY PFISTER, Warden, Pontiac Correctional Center,

    Respondent.

No. 14 C 9802
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Neil Ackerman's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus. For the following reasons, Petitioner's Motion is denied.

## I. BACKGROUND

Petitioner Neil Ackerman ("Petitioner") was charged with solicitation of murder for hire. Following his conviction and exhaustion of his state appeals, Petitioner has brought this federal habeas action. Petitioner is currently serving his sentence at the Hill Correctional Center in Galesburg, Illinois.

### A. Investigation, Trial, and Conviction

In January 2009, Petitioner was arrested for domestic battery and held in the Will County jail. Petitioner shared his cell with Milton Bass (Bass), who was also being held for domestic battery. Bass reported to jail authorities that Petitioner had expressed his desire to either have Bass kill Petitioner's girlfriend, Deanna Musilek (Musilek), or encourage her to take drugs prior to her testifying against Petitioner so that she would not be a credible witness. Police further investigated Bass's claim and eventually outfitted him with a recording device to record a similar conversation between himself and Petitioner. In exchange for his cooperation, Bass requested

1

and was promised a reduction in his sentence. Bass recorded Petitioner providing details about Musilek's probable location, instructions about how to cause Musilek to overdose on heroin, and suggestions about how the murder could be covered up. Bass was released immediately after he aided in recording the conversation with Petitioner.

Petitioner was represented by Michael Knight (Knight) of the Public Defender's Office at trial. Bass, Musilek, the Petitioner, and others testified at his trial for solicitation of murder for hire. Petitioner testified that he participated in the conversation because Bass had threatened to kill members of his family if he did not participate. He testified that he was frightened and made the incriminating statements on the recording in order to "[k]eep the peace in the cell."

On the second day of trial, the parties informed the court that defense counsel Knight had previously represented Bass against a charge of domestic battery, to which Bass pled guilty. Petitioner told the court that he did not object to being represented by defense counsel despite the fact that defense counsel had previously represented Bass.

That same day, Knight also informed the court that his supervisor at the Public Defender's Office, Greg DeBord (DeBord) had worked on the case at bar during his prior employment at the prosecutor's office. Knight represented to the court that although he had planned to consult with DeBord on the case, he had been reminded by the prosecution not to do so because of DeBord's previous involvement with the case. Knight told the court that he had heeded this warning and that it was the policy of the Public Defender's Office to prevent DeBord from involvement with cases in which he had participated as a prosecutor. Petitioner claimed that he had only heard of DeBord's involvement as a former member of the prosecution ten minutes prior to the court addressing the matter. He stated that he trusted defense counsel, but initially expressed some concern to the court about Mr. DeBord's situation, as well as doubt and

confusion about his ability to obtain counsel from another Public Defender's Office. Defense counsel informed the court that he had advised Petitioner that he could object to being represented by the Public Defender's Office to which DeBord had transferred and for which Knight worked. The court explored the issue and confirmed DeBord's lack of involvement in Petitioner's defense on the record. Following this discussion, the court asked Petitioner if he was "fully informed," "satisfied" with his counsel, and "want[ed]" to proceed. Petitioner responded affirmatively and the trial proceeded. Petitioner was convicted of solicitation of murder for hire.

At sentencing, Petitioner told the court that he had not been taking his psychiatric medication at the time of the recorded conversation, and that this fact should have been raised by defense counsel at trial. Petitioner also informed the court that he had not had the opportunity to listen to the entire tape recording of his conversation with Bass before deciding to decline the prosecution's earlier plea deal of a twelve-year prison sentence. Defense counsel told the court that prior to Petitioner's decision to decline the plea agreement, he and his co-counsel had visited Petitioner in jail, brought the recording, played approximately two hours of it for the Petitioner, and then asked Petitioner if he wished to hear more. Defense counsel claimed that Petitioner declined this offer. Defense counsel further claimed that Petitioner also had access to transcripts of the recording. The court found that defense counsel had done an "admirable job" in its representation of Petitioner. Petitioner was sentenced to 30 years imprisonment, required to submit a sample of his DNA, and assessed a $200 DNA Systems Analysis Fee.

## B. Post-conviction Appeals

Following his conviction, Petitioner appealed to the state appellate court on two grounds: 1) the trial court did not adequately inquire into Petitioner's ineffective assistance of counsel claims regarding the impact of his having been off his psychiatric medications at the time of the

recording and his alleged lack of access to the evidence against him prior to declining the plea deal, and 2) the trial court improperly assessed a $200 DNA Systems Analysis Fee. The state appellate court vacated the trial court's ruling on the second issue, but affirmed the first, holding that the trial court acted appropriately in limiting its inquiry into the concerns that Petitioner raised at sentencing because Petitioner's claims against defense counsel were "facially insufficient" and were expressed in "a general and conclusory manner." Finally, the court determined that Petitioner's claim that he had not had access to the recording prior to rejecting the prosecution's twelve-year plea offer was belied by defense counsel's contradictory account.

Petitioner filed a petition for leave to appeal in the Illinois Supreme Court, again arguing that he had suffered ineffective assistance of counsel. In November 2011, the Illinois Supreme Court denied Petitioner's petition for leave to appeal.

In May 2012 Petitioner filed a pro se petition pursuant to Illinois' Post-Conviction Hearing Act alleging 1) ineffective assistance of counsel by his attorney during his direct appeal, based on counsel's failure to argue that the trial court had not sufficiently inquired into the alleged conflict of interest involving Petitioner's defense counsel at the trial stage, 2) Petitioner was owed an additional two days of time served, and 3) Petitioner was due five dollars per day of pre-sentencing credit to be directed toward his fees and fines. The trial court dismissed the post-conviction petition as frivolous or patently without merit in June 2012.

Petitioner next appealed the dismissal of his petition. In May 2014 the state appellate court affirmed the dismissal, finding that counsel's failure to argue that the trial court had not sufficiently inquired into the alleged conflict of interest did not amount to ineffective assistance of counsel because it was a meritless argument. The court had inquired into whether or not DeBord had been involved in Petitioner's defense, and had established that he had not been.

4

Petitioner then filed another petition for leave to appeal, again arguing ineffective assistance of counsel during his direct appeal. In September 2014 the Illinois Supreme Court denied the petition for leave to appeal.

In December 2014 Petitioner filed this § 2254 petition, claiming that 1) trial counsel was ineffective in his failure to adequately prepare for trial, argue the impact of Petitioner's having gone off his psychiatric medication when the Bass recording was made, and review the recording with the Petitioner prior to Petitioner's decision to decline the plea deal, and 2) counsel during the direct appeal had been ineffective in his failure to argue that the trial court did not inquire satisfactorily into the alleged conflict of interest in Petitioner's representation at the trial level.

## II. LEGAL STANDARD

A habeas corpus petitioner must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This means a petitioner must have "invoked one complete round of the State's established appellate review process." *Id.* "In Illinois, which has a two-tiered appellate review system, a petitioner must present a claim at each level of the state court system, either on direct appeal or in post-conviction proceedings." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). If a claim is procedurally defaulted, a federal court will not address its merits unless the petitioner can demonstrate both cause for and prejudice from the default or that a miscarriage of justice will occur if the court fails to address the merits. *See, e.g.*, *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

A petitioner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may issue a writ of habeas corpus on a claim that was adjudicated on

the merits in state court proceedings only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* § 2254(d); *see also Hanson v. Beth,* 738 F.3d 158, 162 (7th Cir. 2013). This is a "highly deferential standard for reviewing claims of legal error by the state courts." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). Federal courts "presume the correctness of state courts' factual findings," and may only find that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented" if the Petitioner succeeds in rebutting the factual finding at the state court level by "clear and convincing evidence." *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).

Petitioner's claim of ineffective assistance requires him to show 1) that counsel was deficient and 2) that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency prong requires that the petitioner demonstrate that counsel's performance fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In evaluating whether the objective reasonableness standard was met by defense counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy,'" and must acknowledge the wide array of different strategies that might be considered sound in the same case. *Id*. at 689-90 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In assessing this claim, the court is highly deferential to counsel and observes "a strong

6

presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Id*. at 689. In order to properly assess whether or not counsel's performance was deficient, the reviewing court should consider "counsel's perspective at the time [of the challenged conduct]," which includes the relevant state law informing his legal decisions. *Id*. See also *Lilly v. Gilmore*, 988 F. 2d 789, 786-88 (7th Cir. 1993). A failure to establish either deficient performance or prejudice dooms the claim, *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)), and if the petitioner is unable to make a sufficient showing on one of the *Strickland* prongs, the court need not consider the other. *Strickland*, 466 U.S. at 697; *see Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012).

A federal court ruling on a habeas petition does not merely accept the state court's determination that counsel provided effective assistance as a binding finding of fact. Rather, it reviews the state court's decision on the mixed question of law and fact deferentially. *Lilly*, 988 F. 2d at 785. However, when a federal court reviews a habeas petition, it does not merely apply the *Strickland* standard according to its own judgment. Rather, in order to grant a writ of habeas corpus, the federal court must be persuaded that "[the state appellate court] applied *Strickland* to the facts of [the] case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

### III. DISCUSSION

### A. Exhaustion of State Remedies

Petitioner has exhausted his remedies at the state level through both direct appeal and post-conviction collateral attack. He therefore properly files his habeas petition in federal court. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013).

7

## B. Ineffective Assistance of Counsel

The state court was reasonable to conclude that the conduct of Petitioner's counsel during both trial and appeal fail to satisfy the Strickland test for ineffective assistance of counsel. The state court reasonably determined that defense counsel's conduct during both phases did not fall below an objective standard of professional reasonableness. That alone is enough to defeat Petitioner's claim under *Strickland*. However, even assuming *arguendo* that the state court was unreasonable in finding that counsel's conduct did not reach the required level of incompetence, it could have fairly determined that there was not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

### 1. Ineffective Assistance at Trial Level

Petitioner claims that his defense counsel at trial rendered ineffective assistance because he was unprepared for trial, failed to advance the argument that Petitioner was not responsible for his criminal conduct because he was not taking his psychiatric medication at the time of that conduct, and because Petitioner alleges that he was not given access to the evidence against him in the form of either the recording of his conversation with Bass or a transcript of that conversation prior to his decision to decline the plea offer.

First, Petitioner fails to cite evidence to support his claim that defense counsel was unprepared for trial. Petitioner does not cite specific errors that defense counsel made during trial due to a lack of preparation, but only argues that defense counsel failed to advance the theory of Petitioner having gone off his psychiatric medications and that defense counsel did not timely provide Petitioner with the recording. Both of these claims, which are distinct from insufficient preparation, will be addressed and rejected below. Without further examples of inadequate

preparation, there is no error allegedly committed by counsel to which the *Strickland* test can be applied. Upon review, the state appellate court held that at trial "[d]efense counsel clearly demonstrated competence and diligence in preserving objections, presenting a plausible and reasonable defense, cross-examining the State's witnesses and arguing mitigating factors for a reduced sentence." The trial transcripts support the state appellate court's assessment of defense counsel's competence. Petitioner has offered no reason to question the state court's conclusion, and there is therefore no need to proceed to the second *Strickland* prong on this allegation.

Second, the presumption of the correctness of the state court's factual determinations defeats Petitioner's claim that his counsel did not provide Petitioner access to the recording of his conversation with Bass or transcripts of that recording while the prosecution's plea offer was still on the table. *Schriro*, 550 U.S. at 473-74. In his current petition, Petitioner asserts that he did not have access to the recording until the day before trial, after the plea offer had been rejected. But the state court found defense counsel's representations credible, including his report that he had played approximately two and a half hours of the recording for Petitioner and that Petitioner declined to hear the rest, and that Petitioner had access to the transcripts prior to the expiration of the plea deal. Petitioner has not advanced anything approaching the clear and convincing evidence required to persuade this court that the state court's factual determination was unreasonable. *Id*. The state court therefore reasonably determined that defense counsel did not render professionally unreasonable assistance. Therefore it is unnecessary to proceed to the second *Strickland* prong on this issue.

Finally, when it evaluated *Strickland*'s performance prong, the state court reasonably decided that defense counsel made a professionally reasonable decision not to argue that Petitioner was mentally compromised when he made the incriminating statements because he

9

had gone off his psychiatric medications. Petitioner himself testified at trial that he had made the statements to pacify Bass, who he alleged had threatened his family if he did not go along with the planning of the murder. Considering that Petitioner's own testimony attempted to explain his comments as a rational tactic to avoid conflict with his cellmate, a reasonable lawyer could conclude that it would be counterproductive to additionally argue that Petitioner made the statements because he was not in his right mind due to having gone off his psychiatric medications. In retroactively evaluating defense counsel's strategic decisions, the court properly employed a strong presumption that defense counsel's challenged decision was a sound strategic move and that reasonable professionals may disagree over the best strategy to employ at trial. *Strickland*, 466 U.S at 689-90 (citing *Michel v. Louisiana*, 350 U.S. at 101). Thus, I affirm the state court's finding that defense counsel's actions in this regard did not meet the deficient performance prong of the *Strickland* test.

**2.      Ineffective Appellate Assistance**

Petitioner also raises an ineffective assistance claim against his appellate counsel. For this claim, he must show that counsel 1) "failed to raise an obvious issue that is stronger than the other claims raised" and 2) "prejudice flowed from that failure." *Johnson v. Thurmer*, 624 F.3d 786, 798 (7th Cir. 2010) (citing *Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004)). Appellate counsel "is not required to raise every non-frivolous issue on appeal." *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015) (citing *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010)).

Petitioner argues that he suffered ineffective assistance of counsel during his state appeal because of his counsel's failure to argue that the defense counsel at trial was ineffective due to two alleged conflicts of interest involving DeBord and defense counsel himself.

In order to determine whether appellate counsel "failed to raise an obvious issue that is stronger than the other claims raised," with the understanding that appellate counsel "is not required to raise every non-frivolous issue," I look to federal and Illinois state law on conflict of interest. *Johnson*, 624 F.3d at 798 (citing *Martin*, 384 F.3d at 851); *Makiel*, 782 F.3d at 898 (citing *Finnan*, 598 F.3d at 425); *Lilly*, 988 F. 2d at 786-88. "The sixth amendment right to effective assistance of counsel included the right to conflict-free counsel," meaning that an attorney must not owe allegiance to another party whose interests run against those of his client. *People v. Taylor*, 930 N.E. 2d 959, 970 (Ill. 2010).

Illinois courts distinguish between a *per se* conflict of interest and an actual conflict of interest. *People v. Daly*, 792 N.E. 2d 446, 449-50 (Ill. App. Ct. 2003). A finding of a *per se* conflict of interest results in automatic reversal of the conviction, even if no actual prejudice is proved, unless the defendant has knowingly waived [his] right to conflict-free counsel. *Id*. at 451-52. If there is no per se conflict of interest, but there remains some fear of potential prejudice, the proper manner for the court to handle the problem depends on the timeliness of it being raised. "If counsel brings the potential conflict to the attention of the trial court at an early stage, a duty devolves upon the trial court to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel." *Spreitzer*, 525 N.E. 2d 30, 36 (Ill. 1988) (citing *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978)). If the court does not deem new counsel necessary and the defendant later raises the issue of conflict of interest on appeal, he must prove that he suffered actual prejudice because of some allegiance owed by defense counsel to another party. *People v. Hernandez*, 615 N.E. 2d 843, 848 (Ill. App. Ct. 1993); see also *Daly*, 792 N.E. 2d at 449-50. This requires his showing "some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict."

11

*Spreitzer*, 525 N.E. 2d at 36. "Absent a showing of special circumstances which might engender an actual conflict, [the Illinois Supreme Court has] trusted to the naturally adversarial instinct of a public defender to put his client's interests first." *Spreitzer*, 525 N.E. 2d at 37.

**i. Conflict of Interest Concerning Bass**

First, "[i]n a situation where defense counsel has previously represented one of the State's witnesses, a *per se* conflict of interest exists if the *professional relationship* between counsel and the witness is *contemporaneous* with counsel's representation of the defendant." *Daly*, 792 N.E. 2d at 450 (emphasis in the original) (citation omitted). The Illinois Supreme Court has held that no such contemporaneous professional relationship exists where defense counsel previously represented a witness for the state in an entirely separate matter, unconnected to the case at issue. *See People v. Enoch*, 585 N.E. 2d 115, 119-20 (Ill. 1991) (holding no *per se* conflict of interest where defense counsel's prior representation of the witness for the state had occurred four years earlier and in an unrelated felony case); *People v. Flores*, 538 N.E. 2d 481, 487 (Ill. 1989) (holding no *per se* conflict of interest where defense counsel's representation of the state's witness and the defendant was not simultaneous and representation of the state's witness did not "concern[] the defendant's present trial); see also *People v. Hernandez*, 615 N.E. 2d at 848.

Petitioner argues that Knight's former representation of Bass on domestic assault charges presented a conflict of interest at trial, and that his appellate counsel's failure to raise this point on appeal constituted ineffective assistance. The state court reviewing Petitioner's claims correctly noted that Petitioner did not explicitly allege a *per se* conflict of interest, and therefore that court did not address *per se* conflicts. However, considering Petitioner's pro se status, I consider both *per se* and actual prejudice theories of conflict of interest, and find both lacking.

12

No *per se* conflict of interest existed because Knight's professional relationship with Bass was not contemporaneous with Knight's representation of the defendant. *Daly*, 792 N.E. 2d at 450. Knight had counseled Bass prior to Petitioner's trial in a completely separate matter—a guilty plea to domestic battery. Given that no *per se* conflict of interest existed, it falls to Petitioner to prove that he suffered actual prejudice because of defense counsel's prior representation of Bass. *People v. Hernandez*, 615 N.E. 2d at 848. Petitioner offered no evidence or credible argument to support such a claim.

### ii. Conflict of Interest Concerning DeBord

Second, when a former prosecutor who was involved in the decision to charge a defendant later joins the Public Defender's Office that employs that defendant's counsel, but the former prosecutor does not serve on the case, the Illinois Supreme Court has found that there is no *per se* conflict of interest. *People v. Spreitzer*, 525 N.E. 2d at 37-38. This is precisely the factual situation that the state court determined existed in Petitioner's case, meaning defense counsel suffered no *per se* conflict of interest. Petitioner also fails to establish actual prejudice due to a conflict of interest with DeBord. Although Petitioner makes conclusory allegations that Knight failed to file a motion to suppress because of a conflict of interest with DeBord, there is no evidence to support this claim. The trial court believed Knight when he represented that he had not involved DeBord in the decision, and the transcripts reveal that he and his supervisor, Mr. Astrella, agreed that there was no legal basis for the motion to suppress, and therefore no reason to file it. The court of appeals affirmed the trial court's analysis.

Petitioner now argues that Knight lied to the court in saying that he had not consulted with DeBord. Petitioner bases this claim on Knight's statement to the court that he intended to discuss a pretrial motion with "DeBord, [his] supervisor", prior to filing it, and his later

statement that "[he] did bring [the pretrial motion] to [his] supervisors, including Mr. Astrella, who told me not to file the motion." However, this conjecture on Petitioner's part fails to even begin to approach the level of clear and convincing evidence required to depart from the state court's factual determination, namely that Knight did not consult DeBord, and DeBord remained properly insulated from the proceedings. *Schriro*, 550 U.S. at 473-74. The state appellate court fairly determined that the trial court made a reasonable determination that there were no conflicts of interest at play. *People v. Ackerman*, 10 N.E. 3d 470, 475-76 (Ill. App. Ct. 2014). Thus, this conflict of interest claim fails.

### iii. Appellate Counsel's Performance

In considering the impact of Petitioner's conflict of interest claims, "[t]he Sixth Amendment does not require counsel to…press meritless arguments before a court." *Lilly v. Gilmore*, 988 F. 2d 783, 786 (7th Cir. 1993). Petitioner's claims that defense counsel suffered a conflict of interest are legally meritless under a *per se* theory and there is no support for claims of actual prejudice. Therefore, the state court reasonably determined that Petitioner's appellate counsel did not fall below a standard of reasonable professional conduct by failing to press the meritless line of conflict of interest argument. Thus *Strickland*'s deficient performance prong was not satisfied. That alone is enough for Petitioner's claim of ineffective assistance at the post-conviction level to fail. However, considering the lack of legal merit and factual support for Petitioner's conflict of interest claims, Petitioner has also failed to demonstrate a reasonable probability that the outcome of the appeal would have been different if defense counsel had pursued these arguments. Therefore, Petitioner fails on the second *Strickland* prong as well.

14

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: August 1, 2016